SETH McGUIRE vs. INHABITANTS OF LINNEUS.

Aroostook.    Opinion February 5, 1883.

*Soldiers' bounties.    Trust.    Limitations.    Stat. 1868, c. 225.*

The "surplus" mentioned in stat. 1868, c. 225, § 6, belongs to soldiers who served on the town's quota without receiving any bounty therefrom, to be shared among them in proportion to the length of time they served.

The town holds such surplus in trust until called for by the *cestui que trust.* The statute of limitations will not begin to run until the trust is disavowed by the town.

ON REPORT on agreed statement of facts.

Assumpsit.    Writ, dated August 21, 1880.

Plea, general issue and statute of limitations.

The facts are stated in the opinion.

*V. B. Wilson* and *W. T. Spear*, for the plaintiff, cited: *Gilman* v. *Patten*, 70 Maine, 183; *Riggs* v. *Lee*, 61 Maine, 499; *Hosmer* v. *Clarke*, 2 Maine, 308; 9 Pick. 490; 1 *Sumner*, 478; 3 Pars. Contr. 92, 93; Hill on Trustees, 375, 64, 264; *Lee* v. *Lanahan*, 59 Maine, 478; 60 Maine, 158; Perry on Trusts, § § 850, 24, 42, 45, 30; 63 Maine, 404; 3 Bac. Abr. 510; Ang. Lim. 166, 168.

*Powers and Powers* for the defendants.

The demand in this case was not made within a reasonable time. Some nine or ten years elapsed after receipt of the money, before demand was made.

This demand must be made in a reasonable time,— six years. *Codman* v. *Rogers*, 10 Pick. 112. This doctrine is recognized in *Lee* v. *Lanahan*, 59 Maine, 478. *Gilman* v. *Patten*, 70 Maine, 183, differs very materially from the case. There the demand was made, and the defendants notified of the claim within a year.

VIRGIN, J. The plaintiff seeks to recover a share of the "surplus" of the sum received by the defendants, under the provisions of the equalization statute, above the amount actually paid

out by them for bounties. The defendants do not deny that the "facts agreed" would bring the plaintiff's case within the provisions of the statute as it has been construed by the court, and would entitle him to recover, provided, he had seasonably made his demand, and brought his action ; but contend that his right of action was barred by the general statute of limitations before he made his demand. But our opinion is otherwise.

The provisions of the stat. 1868, c. 225, emphatically show that the legislature had in view the interests of its soldiers as well as of its municipal corporations. The main object of the legislature was to approximately equalize the then very unequal burden of the war debts of the towns, by a limited assumption and reimbursement thereof on the part of the state. In effecting the main purpose, regard was also had for those soldiers who had served on the quotas of their respective towns, without receiving any bounty therefrom. Accordingly, when upon the basis fixed for reimbursement, any town was to receive more than it had paid out for bounties, the legislature provided that the "surplus" should belong to the soldiers (and their legal representatives) who served on the town's quota without receiving any bounty therefrom, to be shared among them in proportion to the length of time they respectively served. *Riggs* v. *Lee,* 61 Maine, 499. And so careful was the legislature in the soldiers' behalf, that a positive vote of the town, appropriating such surplus to such soldiers, was made a condition precedent to the receipt by the town of its part of the reimbursement fund. St. 1868, c. 225, § 6. And no statute could be founded on more just and equitable considerations. The municipal war debts which the state undertook to equalize, arose from bounties paid to some of their soldiers. And while many towns, under the provisions of § 1 of the statute, would receive much less than they had paid out, quite a number of towns, among them the defendant, received more. And every soldier who, like the plaintiff, served upon the quota, added to the " surplus" in proportion to the length of his service. And the people, through their legislature, wisely concluded and so provided, in substance, that while there is no reason why a town shall make money out of the

proceedings, there is every reason why soldiers, who received no bounties from their town, but whose services helped swell the surplus, should share it in the same proportion as they had created it — according to the length of their respective service.

In carrying this secondary object into effect, the legislature created a trust in the surplus money received by the towns, and the towns by force of the statute and their vote of appropriation were constituted trustees, to hold the money for the soldiers until called for by them, or, in case of their death, by their legal representatives. The subject matter and purposes of the trust, as well as the persons to take the beneficial interests therein, are clearly ascertained. Although the *cestuis que trust* are not specifically named, they are so described that they can be ascertained, and the list furnished by the town to the equalization commissioners, must contain their names. The relation of trustee and *cestui que trust* being shown to have subsisted between these parties, the possession of the money by the town was not adverse to that of its *cestui que trust*, until repudiation of the trust evidenced by an intention to hold it adversely was proved. *Frost* v. *Frost*, 63 Maine, 399, 404; *Jones* v. *McDermott*, 114 Mass. 400. The only evidence of such intention is the refusal to perform on the demand made on August 20, 1880. Assuming this a sufficient disavowal of the trust, the statute would begin to run from that date. *Childs* v. *Jordan*, 106 Mass. 321.

What shall be the amount of the judgment? The sum received from the state was three thousand four hundred eighteen dollars and fifty cents of principal, and one hundred ninety eight dollars and sixty seven cents of interest. The town paid out for bounties, in 1862, the sum of five hundred dollars; and subsequently, reimbursed the state for bounties advanced to soldiers who actually served on the town's quota, to the amount of two thousand four hundred dollars. 69 Maine, 585, 589. A proper proportion of the above interest money belonged to the trust fund, and the plaintiff is entitled to his share of it. The two thousand four hundred dollars should be reckoned as money paid out for bounties for the same reason as the five hundred. The parties agree

that the plaintiff's share is forty-seven one thousand two hundred fiftieths of the surplus. Upon this basis there must be,

> *Judgment for plaintiff for forty-five dollars and seventy seven cents and interest from August 20, 1880.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and SYMONDS, JJ., concurred.