MARY F. KEARNEY vs. THE MECHANICS NATIONAL BANK
OF WORCESTER, executor.

Worcester.   January 3, 1962. — March 1, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Frauds, Statute of.   Contract, Parties.   Trust, What constitutes.   Fiduciary.   Limitations, Statute of.*

An oral promise to a mortgagor that if funds available from the mortgage
loan would be turned over to the promisor for his personal use the promisor "would make all future payments due on the mortgage, both principal and interest, and would save the . . . [mortgagor] harmless from
any liability thereon" was not a special promise to "answer for the
debt . . . of another" within G. L. c. 259, § 1, Second.   [701]

In an equity proceeding in a Probate Court against an executor, a finding
by the judge, that the decedent orally promised that, if the proceeds of
a loan secured by a mortgage of real estate owned by the petitioner and
the decedent's wife jointly were turned over to the decedent for his
personal use, which was done, he would make all future payments due
on the mortgage, both principal and interest, and would save "the petitioner" harmless from liability therefor, required a conclusion that the
promise was made only to the petitioner and not to the petitioner and
the decedent's wife jointly, and was valid and enforceable against the
executor.   [701–702]

A transfer of money on a promise by the transferee to invest it for the
transferor created a trust, and the statute of limitations, G. L. c. 260,
§ 2, was not a bar to a proceeding by the transferor to recover an uninvested balance of the money from the executor of the transferee's
estate where it did not appear that there was a repudiation of the trust
on the part of the transferee six years or more before the commencement
of the proceeding.   [702–703]

PETITION, filed in the Probate Court for the county of
Worcester on June 8, 1960.

The petitioner appealed from a decree by *Wahlstrom*, J.,
dismissing the petition.

*Morton C. Jaquith*, for the petitioner.

*Russell F. Bath, Jr.*, for the respondent.

SPALDING, J.   This is a petition in equity in the Probate
Court against the executor of the estate of Paul C. Lytle.

The objectives of the petition are (1) to enforce an oral contract made by the testator with the petitioner, and (2) to recover the balance of a fund which the petitioner turned over to the testator to invest for her.

The judge made findings of material facts of which the following is a summary.[1] The testator (hereinafter called Lytle), an investment broker, died on March 16, 1959. He was survived by his widow, Alice, and their three children. Lytle's will was allowed on December 22, 1959, and the respondent bank was appointed executor. The petitioner is a sister of Lytle's widow.

In 1946 the petitioner and her sister purchased a lot of land in Harwichport for $700, the petitioner contributing $600 and her sister $100. Title was taken in both names as joint tenants. In 1947 and 1948 they mortgaged the land to the Bass River Savings Bank as security for loans, from the proceeds of which they "had a house built on . . . [the] land sometime between 1947 and 1949." In addition to the proceeds from these loans, the petitioner contributed the sum of $3,500 toward the construction of the house. In December, 1955, $3,515.29 was owed by the two sisters to the mortgagee. At that time Lytle requested that a new mortgage to secure a larger loan be placed on the property and that the proceeds be turned over to him for his personal use. Lytle promised "that if the funds were so provided, he would make all future payments due on the mortgage, both principal and interest, and would save the petitioner harmless from any liability thereon." This "understanding" was oral.

Accordingly, a new mortgage loan for $12,000 was negotiated with the mortgagee. After deducting the amount of the existing mortgage and incidental expenses, the mortgagee paid the balance, $8,442.40, by its check payable to the order of the petitioner and her sister. They indorsed the check and turned it over to Lytle. Until July of 1958, Lytle and the petitioner alternately made payments of principal and interest to the mortgagee as they fell due. No pay-

[1] The evidence is not reported.

ments were made by the petitioner's sister. Since then Lytle made no further payments on the mortgage, "though often requested to do so." The balance due on the mortgage as of July, 1958, was $10,633.76. Thereafter all of the mortgage payments were made by the petitioner. As of April, 1960, she had paid $1,606. The balance then due on the mortgage was $9,876.15.

Concerning the second matter set forth in the petition, the judge found that the petitioner had transferred to Lytle in 1946 the sum of $6,400 on his promise to invest this money for her. Of this amount, Lytle invested $5,200 in securities, and used $275 to defray an obligation of the petitioner. The balance, $925, was never invested by Lytle or otherwise accounted for.

Having found the foregoing facts, the judge ordered that the petition be dismissed. From a decree in accordance with this order, the petitioner appealed.

1. Several defences were set up in the answer of the respondent. There is nothing, however, in the decision of the judge to indicate which of these he regarded as having been established. As to the legal basis for his decision we can only speculate.

One of the defences pleaded to the first part of the petition, although not pressed in this court, is that the petitioner's case is based on a special promise to "answer for the debt . . . of another," and, since it was not in writing, was within the statute of frauds. G. L. c. 259, § 1, Second. There is no merit to this defence. A promise to the debtor, not to the creditor—and that was the situation here—is not within the statute. *Sokol* v. *Nathanson,* 317 Mass. 325, 327, and cases cited.

In support of the decision below, the respondent advances the following argument: The loan to Lytle was a joint undertaking on the part of the petitioner and her sister. Since the right created was joint, the petitioner suing alone cannot recover; the other obligee, the sister, must be joined as a petitioner (*Thomas* v. *Benson,* 264 Mass. 555). But, it is argued, even if this is done, the contract, involving

Lytle and his wife as contracting parties, would be unenforceable. G. L. c. 209, § 2. *Gahm* v. *Gahm,* 243 Mass. 374, 376. Conceivably (as the petitioner seems to concede) if the facts are as assumed in the foregoing argument, the petition cannot be maintained. We need not, however, decide that question, for the main assumption on which the argument is based is not justified. The respondent's argument is grounded on the assumption that Lytle's promise to make the mortgage payments was made to his wife and the petitioner jointly. But as we construe the findings of the judge, that is not the case. Nowhere in the report of material facts is it found, nor is there even a suggestion, that Lytle contracted with his wife in the mortgage-loan transaction. On the contrary, the judge expressly found that Lytle promised that "he would make all future payments due on the mortgage, both principal and interest, and would save the *petitioner* harmless from any liability thereon" (emphasis supplied). The fact that the wife and the petitioner owned the mortgaged property as joint tenants is not necessarily inconsistent with a finding that Lytle contracted solely with the petitioner. Indeed, in view of the legal prohibition against contracts between spouses, it is not difficult to understand why the wife did not participate in the contract.

We are of opinion that the contract between the petitioner and Lytle was valid and enforceable and that the petitioner was entitled to recover from Lytle's estate the sums paid by her on the mortgage, and to be saved harmless from further payments.

2. The only defence asserted by the respondent to the second part of the petition is the statute of limitations. G. L. c. 260, § 2. Admittedly, the petitioner transferred the $6,400 to Lytle in 1946. Since the present petition was not brought until June 8, 1960, the statute of limitations, if applicable, would be a bar.

Although the judge made no express finding as to the existence of a trust, we are of opinion that the facts found by him compel the conclusion that there was a trust. See

*Davis* v. *Coburn,* 128 Mass. 377, 380; *Stuck* v. *Schumm,* 290 Mass. 159, 161; *Akin* v. *Warner,* 318 Mass. 669, 674. It is settled that the statute of limitations does not begin to run in favor of a trustee against a beneficiary until the trustee has repudiated the trust and knowledge of that repudiation has come home to the beneficiary. *Davis* v. *Coburn,* 128 Mass. 377, 380. *Stuck* v. *Schumm,* 290 Mass. 159, 163–166. *Akin* v. *Warner,* 318 Mass. 669, 676. There are no facts reported which would justify the conclusion that there was a repudiation on the part of Lytle six years prior to the commencement of the petition. It follows that the petitioner was entitled to recover the $925 withheld from her by Lytle together with interest.

3. The final decree is reversed and a new decree is to be entered in conformity with this opinion. The petitioner is to have costs and expenses of this appeal.

*So ordered.*